UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
**STEFAN STEFANESCU,**

                Plaintiff,

        - against -                      **MEMORANDUM DECISION AND ORDER**

**ANDREW SAUL,**                                  19-CV-03262 (AMD)
Commissioner of Social Security,

                Defendant.

---------------------------------------------------------------X
**ANN M. DONNELLY,** United States District Judge:

        The plaintiff appeals the Social Security Commissioner's decision that he is not disabled for the purposes of receiving disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons that follow, I deny the plaintiff's motion for judgment on the pleadings, grant the Commissioner's cross-motion and affirm the decision below.

        On February 11, 2016, the plaintiff applied for DIB and SSI with an onset date of October 25, 2015, alleging disability because of back pain, right knee pain and right thumb pain. (Tr. 101, 254). On April 17, 2018, Administrative Law Judge ("ALJ") Michael Kopicki held a hearing at which the plaintiff, represented by counsel, testified. (Tr. 63-99.) In a May 11, 2018 decision, the ALJ found that the plaintiff was not disabled during the period in question. (Tr. 28-38.) Specifically, the ALJ found that the plaintiff engaged in substantial gainful activity after the alleged onset date—a fact that generally precludes a finding of "disabled." The ALJ also determined that the plaintiff had severe impairments of degenerative disc disease of the lumbar

spine and right de Quervain's tenosynovitis,[1] but that he was not disabled because his impairments—individually, or in combination—were not severe enough to meet or medically equal the criteria listed in the Social Security regulations. (Tr. 32.) The ALJ found that the plaintiff's depression, diagnosed after his initial application, was not a severe impairment. (Tr. 31.) Finally, the ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations, and that he could perform jobs that existed in the national economy. (Tr. 32, 37.)

The plaintiff appealed and submitted additional records from Elmhurst Hospital covering the period from July 31 to October 18, 2018, and documenting increased lumbar pain. (Tr. 8-19). On March 28, 2019, the Appeals Council denied the plaintiff's request for review, explaining that the plaintiff's "additional evidence does not relate to the period at issue" and thus "does not affect the decision about whether [he was] disabled beginning on or before May 16, 2018." (Tr. 1-4.) The plaintiff filed this action on May 31, 2019 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 12, 17).

## LEGAL STANDARD

A district court may set aside a Commissioner's final decision only if the decision rests on legal error or is not supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)

---

[1] De Quervain's tenosynovitis is a condition affecting the tendons on the thumb side of the wrist. It can cause pain and swelling at the base of the thumb and make it difficult to turn the wrist, grasp anything or make a fist. *De Quervain's Tenosynovitis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332 (last visited Sept. 28, 2020).

("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted).

The district court may reject the Commissioner's factual findings "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citation and internal quotation marks omitted). The district court may not substitute its own judgment for the ALJ's, even if the court "might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation omitted). It is for the agency, not the court, to "weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

## DISCUSSION

The plaintiff challenges the ALJ's evaluation of the applicable listings and takes issue with the ALJ's RFC determination, arguing that it is not supported by substantial evidence because the ALJ did not properly weigh his treating physician's opinions, did not account for new evidence submitted to the Appeals Council and did not consider all of the plaintiff's conditions. (ECF No. 12-1 at 10.) The defendant responds that the Commissioner's determination that the plaintiff was not disabled is correct and should be affirmed. (ECF No. 17-1 at 11.)

3

**I.      The Listings Analysis**

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," the ALJ must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Each impairment in appendix 1 "is sufficient, at step three, to create an irrebuttable presumption of disability" under the Social Security regulations. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *see* 20 C.F.R. §§ 404.1520(d), 416.920(d) ("If you have an impairment(s) which . . . is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."). While an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," his failure to do so does not prevent a court from upholding his determination as long as it is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Although the ALJ did not address the plaintiff's de Quervain's tenosynovitis in relation to any of the listings, he did address it at length in support of his RFC determination. (Tr. 33-34.) For example, the ALJ noted that the plaintiff injured his right wrist in April of 2015, before the alleged onset date, and that he received regular physical therapy for the injury through the remainder of 2015. (Tr. 33, 324, 346.) The plaintiff's treating physician, Dr. David Neuman, reported steady improvement throughout 2015 and cleared the plaintiff to return to work on August 3, 2015—before the alleged onset date. (Tr. 33, 321-32, 341.) The ALJ observed that the plaintiff still reported mild pain and tenderness in his wrist in March of 2016, and that an

4

examination revealed "good, but not full, range of motion of his right wrist and no motor or sensory deficits." (Tr. 33, 319-20.) The plaintiff's doctor explained the treatment options, but the plaintiff was not interested in surgical treatment. (Tr. 34.) At a June 2016 follow-up exam, the plaintiff had reduced range of motion in his wrist but full range of motion in his fingers. (Tr. 34, 361-63.) The consultative surgeon, Dr. Daniel Caligiuri, opined that without surgery, the plaintiff had reached maximum medical improvement in his wrist and would likely have twenty percent reduced use of his right hand. (Tr. 362.)

There is no evidence in the record to support a finding of disability based solely on the plaintiff's wrist injury. The plaintiff's argument that the ALJ should have considered his de Quervain's tenosynovitis under Listing 11.14—Peripheral neuropathy—or Listing 14.06—Undifferentiated and mixed connective tissue disease—is not persuasive because the plaintiff's wrist injury does not meet the symptomatic requirements of either of these Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Apr. 2, 2018). Nor does an analysis of the plaintiff's wrist injury under the more relevant Listing 1.02—Major disfunction of a joint(s) (due to any cause)—produce a result even approaching the severity required by the Listing. *See id*. § 1.02 (requiring "involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively"). Therefore, substantial evidence supports the ALJ's finding that the plaintiff's de Quervain's tenosynovitis does not meet a Listing.

## II.    RFC Determination

There is also substantial evidence to support the ALJ's determination that the plaintiff had the RFC to perform light work, with the limitations that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, occasionally climb, stoop, balance, kneel, crouch, and

5

crawl, and frequently handle and finger with his right hand. (Tr. 32.)[2] The ALJ determined that the plaintiff could stand and/or walk for six hours of an eight-hour workday with normal breaks, and that he could sit for six hours of an eight-hour workday with normal breaks. (*Id*.) The plaintiff contends that the ALJ did not give proper weight to the opinions of orthopedic surgeon Dr. Leon Bernstein and treating physician Dr. Neuman, and did not account for the plaintiff's wrist injury when he found that the plaintiff could "frequent[ly]" handle and finger with his right hand. (ECF No. 12-1 at 16-17.) The plaintiff also asserts—in his reply brief—that the ALJ should have considered his mental limitations due to depression in determining his RFC. (ECF No. 19 at 3.)

"The 'treating physician' rule requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order).[3] If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's

---

[2] "Occasionally" in this context means an "activity or condition exists up to 1/3 of the time," and "frequently" means an "activity or condition exists from 1/3 to 2/3 of the time." *Valerio v. Comm'r of Soc. Sec.*, No. 08-CV-4253, 2009 WL 2424211, at *1 n.1 (E.D.N.Y. Aug. 6, 2009).

[3] The treating physician rule applies because the plaintiff filed his claim before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927.

>opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Failure to provide "good reasons" for the weight assigned to a treating physician's opinion constitutes grounds for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted).

The ALJ set forth his reasons for the weight of each medical opinion in the record. Dr. Neuman opined that the plaintiff had a "moderate partial disability due to the right wrist injury" and was temporarily "disabled and unable to perform any of his/her regular duties." (Tr. 322, 325, 328, 331, 337.) The ALJ gave "little" weight to Dr. Neuman's opinions because Dr. Neuman did not include a functional analysis of the plaintiff's capabilities and did not explain how he decided that the claimant should "temporarily perform no work." Moreover, Dr. Neuman opined that the plaintiff had "moderate partial disability" in relation to the plaintiff's workers compensation claim; "an opinion on the issue of disability is reserved to the Commissioner and is not given special significance." (Tr. 35.) Finally, the ALJ noted that Dr. Neuman rendered only one of his opinions—dated December 21, 2015—after the alleged onset date. (*Id.*)

While he gave little weight to Dr. Neuman's opinion, the ALJ accounted for the plaintiff's wrist injury in his RFC analysis by limiting the plaintiff to "frequent" handling and fingering with the right hand. This finding is also supported by Dr. Caligiuri, an orthopedic surgeon who examined the plaintiff twice and opined that without wrist surgery, the plaintiff

7

would experience about a twenty percent loss of function in his right hand. (Tr. 362.) Limiting the plaintiff's use of his right hand to less than two thirds of the day reflects both Dr. Neuman's and Dr. Caligiuri's assessments of partial disability in the plaintiff's right hand. In addition, Dr. Caligiuri and consultative examiner Dr. Trimba both found that the plaintiff's finger dexterity and movement were intact despite the injury to his wrist. (Tr. 362.) Thus, the ALJ's limitation to "frequent" use of the right hand is supported by the medical record.

The ALJ also assigned "little" weight to the opinion of Dr. Bernstein, an orthopedic surgeon who saw the plaintiff for back pain. Dr. Bernstein opined that the plaintiff could lift five pounds occasionally, stand and/or walk for up to two hours, and sit for less than six hours of an eight-hour workday. (Tr. 35-36.) As the ALJ noted, Dr. Bernstein treated the plaintiff for only two months before rendering this opinion, did not provide an adequate explanation for the severity of the limitations and his opinion was inconsistent with other evidence in the record. (Tr. 36.) That evidence included a November 3, 2015 treatment note from Dr. Neuman, a November 18, 2015 MRI of the plaintiff's lumbar spine, and Dr. Trimba's May 25, 2016 consultative examination, which reflect that the plaintiff had sporadic flare-ups of lower back pain that were treated with physical therapy, exercise and over-the-counter pain medication. (Tr. 8-19, 308-12, 356-59.)[4] And, Dr. Trimba, who examined the plaintiff around the same time as Dr. Bernstein, found that the plaintiff had "mild" limitation in his ability to sit for prolonged periods, "moderate" limitations in his ability to stand and walk for prolonged periods, and "moderate" limitations in his ability to climb steps, push, pull or carry heavy objects. (Tr. 359.)

---

[4] On November 3, 2015, Dr. Neuman wrote the plaintiff a prescription for diclofenac sodium, a non-steroidal anti-inflammatory drug that reduces pain and inflammation. (Tr. 308); *Diclofenac Sodium*, Drugs.com, https://www.drugs.com/uk/diclofenac-sodium-50mg-tablets-leaflet.html (last visited Sept. 28, 2020). However, it is not clear whether or for how long the plaintiff used this medication. According to Dr. Trimba, who examined the plaintiff six months later, the plaintiff was taking only Advil. (Tr. 357.)

8

In any event, the ALJ accounted for the plaintiff's lower back pain in his RFC determination by limiting him to light work with further restraints on lifting, carrying, climbing, stooping, balancing, kneeling, crouching and crawling.  This determination is supported by the records, which reflect that the plaintiff managed his lumbar pain with physical therapy, a back brace and over-the-counter medication as needed.  (Tr. 309, 356-57.)  The plaintiff's testimony reflects that although he had pain in his lower back and right leg when he walked or sat for long periods, he did not receive any treatment for his back pain from November of 2016 through the date of his hearing in 2018 and was taking only Advil as needed.  (Tr. 82, 89-90.)  Finally, the plaintiff's return to full-time work from November of 2016 through February of 2017—despite his complaints of back pain—and the fact that he drove a taxi for part of 2017 (Tr. 84-85, 87), support the finding that plaintiff's back pain did not preclude light work with additional functional limitations.

The plaintiff also challenges the RFC determination on the grounds that the ALJ did not properly account for the plaintiff's mental limitations caused by his depression.  (ECF No. 19 at 3.)  The ALJ evaluated the plaintiff's depression at step two and three of his analysis and found that the plaintiff had no documented limitations "in understanding, remembering, or applying information; no limitation in interacting with others; no limitation in concentration, persistence, or maintaining pace; and no limitation in adapting or managing oneself."  (Tr. 31-32.)  The ALJ also noted that the plaintiff's depression "has not been established to meet the durational requirement of lasting or being expected to last for at least 12 months," and that "the record contains no mental status examinations, history, follow-ups, or details on the claimant's condition" after August of 2017.  (Tr. 31.)  The ALJ concluded, "the following residual

9

functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 32.)

In addition to absence of treatment records, the plaintiff's testimony provides support for the ALJ's findings regarding the length and severity of his depression. The plaintiff explained that he stopped working in February of 2017 after a doctor diagnosed him with depression (Tr. 70), but the only evidence of that diagnosis are records from Elmhurst Hospital from later that year, which note that the plaintiff suffered a traumatic brain injury and an "altered mental status" in March of 2017. (Tr. 390, 394, 400.) The plaintiff testified that he stopped working in February of 2017 after he fell in his apartment; he "didn't want to go back to work" because he was having problems with his employer. (Tr. 74, 87-88.) The plaintiff was apparently diagnosed officially with depression in July or August of 2017 and was prescribed medication, but he "refused to see counselors." (Tr. 80-81.) Moreover, he discontinued treatment after a few months because he "felt better" and had "improved [him]self." (Tr. 82.) While the ALJ could have been more specific in his RFC analysis, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)), his failure to do so was harmless because "substantial evidence supports his conclusion that [the plaintiff's depression] did not warrant any limitations." *Sirris v. Comm'r of Soc. Sec.*, No. 18-CV-1087, 2020 WL 5105110, at *9 (W.D.N.Y. Aug. 31, 2020) (collecting cases); *see also* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d) (outlining the standards for evaluating mental impairments).

Finally, the plaintiff argues that the Appeals Council should have considered the records that he submitted to the Council after the ALJ denied benefits. "[T]he Appeals Council . . . will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period

10

on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (citing 20 C.F.R. § 416.1470).  The records that the plaintiff submitted to the Appeals Council postdate the ALJ's decision and reflect that the plaintiff's lumbar condition got worse after the ALJ's decision (Tr. 8-19.); they do not provide new evidence about the period before the ALJ's decision.  Thus, the Appeals Council did not err in not considering these records.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is denied and the Commissioner's motion is granted.  The decision of the ALJ is affirmed and this appeal is dismissed.

**SO ORDERED.**

                                                    s/Ann M. Donnelly
                                                 ANN M. DONNELLY
                                                 United States District Judge

Dated: Brooklyn, New York
       September 28, 2020